**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larryl Jerome WADE, Defendant–
Appellant.**

No. 96–3938.

United States Court of Appeals,
Seventh Circuit.

Argued April 30, 1997.

Decided May 20, 1997.

W. Charles Grace, James L. Porter (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Renee E. Schooley (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before COFFEY, FLAUM, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

After pleading guilty to three counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1), Larryl Jerome Wade received a sentence of 145 months' imprisonment. On this appeal, Wade challenges his sentence on three grounds, claiming that (1) he should not have been sentenced under U.S.S.G. § 2D1.1(c), because the government failed to prove by a preponderance of the evidence that the substance at issue was "crack" cocaine, (2) the court erred in determining the amount of cocaine attributable to him for purposes of U.S.S.G. § 1B1.3, and (3) the court failed to make specific findings of fact on both the type and amount of cocaine, as required by Fed.R.Crim.P. 32(c)(1). Because we conclude that the district court did not clearly err in either of the first two respects and that its findings were adequate under the circumstances of this case, we affirm.

The district court held a hearing to resolve Wade's objections to the presentence report. At that hearing, two witnesses testified about the nature of the substance they had purchased from Wade. The first was an undercover agent from the Illinois State Police Metropolitan Enforcement Group, who had bought drugs on several occasions from Wade. He testified that he requested crack cocaine each time and that Wade sold him a lumpy, off-white rocklike substance, which Wade said was crack. The second witness was an investigator from the Drug Enforcement Agency (DEA), who testified that crack cocaine is a lumpy and rocklike substance and that it is the only type of cocaine base sold in the relevant geographic area of East St. Louis. During the change of plea hearing, the government characterized the substance in question as "crack," but Wade admitted only to possessing and selling "cocaine base." At the sentencing hearing, however, testimony indicated that in a voluntary written statement taken by the undercover agent after Wade's arrest, Wade had described the product he sold as "crack" cocaine. Wade offered no witnesses to testify to the contrary, although he did offer the laboratory analyses of the substances purchased, which were consistent with a finding that the substance was crack.

The district court heard conflicting evidence on the drug quantity question. On the one hand, as Wade's able lawyer stressed at oral argument, the three purchases made by the undercover agent suggested that Wade charged an exceptionally high price for his cocaine. Undisputed evidence showed that the agent paid Wade $400 for 2.1 grams of crack on the first occasion, that he paid $500 for 4.5 grams the second time, and that he paid $220 for 1 gram the third time. Averaged out, this suggested that Wade received a price of a little less than $150 per gram, although the individual transactions ranged from $111 per gram (transaction 2) to $220 per gram (transaction 3). The price to quantity ratio is important, because the agent also testified that he bought a minimum of $100 worth of cocaine base from Wade three times a week for a five month period, but he did not testify what amounts those dollars procured. On the other hand, the probation officer estimated that $100 would buy 1 gram of crack, and found that Wade had apparently deliberately overcharged the undercover agent in the three documented sales. Supervisory Special Agent Brunholtz of the DEA, who had been working in the St. Louis area since 1981, corroborated the probation officer's estimate based on his personal knowledge of the local drug market and confirmed that the transactions at $400 for 2.1 grams and $220 for 1 gram were unusually highly priced.

At the conclusion of the sentencing hearing, the district court stated:

From an examination of the presentence report and the evidence educed [sic] today as well as the arguments of counsel on the subjects relevant to the presentence report, I find the appropriate offense level in this case to be 27, a criminal history category 6, producing a sentencing guideline range of 130 to 162 months.

Referring back to the presentence report, the probation officer calculated that the three $100 sales each week for the period from November 1995 to March 1996 amounted to

at least 36 grams of crack. (This, we note, is closer to the $150 per gram price that the three documented sales produce, if we assume a weekly net of $300, times 4 weeks in a month, times 5 months.) To the 36 grams, the probation officer added the 7.6 grams that the undercover agent purchased, which led to a total of 43.6 grams for sentencing purposes. Under U.S.S.G. § 2D1.1(c)(5), 43.6 grams of crack yielded a base offense level of 30. Wade also received a three-level downward departure for acceptance of responsibility pursuant to § 3E1.1(a), (b), as recommended in the presentence report, which resulted in the final offense level of 27 found by the court.

■ We review the first two of Wade's challenges under the clearly erroneous standard, as they both address factual findings made by the sentencing court. See *United States v. Hassan*, 927 F.2d 303, 309 (7th Cir.1991). From that perspective, we do not see clear error in either determination. It is true that U.S.S.G. § 2D1.1(c), Note D, now defines cocaine base as "crack," and reserves its draconian penalties for that substance alone. It also may be true that other substances might be classified as cocaine base that do not have all the characteristics of crack. See *e.g.*, *United States v. Munoz–Realpe*, 21 F.3d 375, 376–78 (11th Cir.1994); *United States v. Lopez–Gil*, 965 F.2d 1124, 1125 (1st Cir.), *cert. denied*, 506 U.S. 981, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) (applying pre–1993 Guidelines amendment to definition of cocaine base). That is all beside the point for Wade, because the testimony before the court easily supports the factual finding that the substance Wade was trafficking in was crack. Wade himself called it crack, it looked like crack (*i.e.*, it was a lumpy, off-white, rocklike substance), and its chemical composition was consistent with that of crack. It is hard to see how the district court could have found otherwise on this record.

■ Although the court's finding on drug quantity may seem to be closer, it is not when we recall the standard of review. The task on appeal is not to see whether there is any view of the evidence that might undercut the district court's finding; it is to see wheth-er there is any evidence in the record to support the finding. See *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Taking together the testimony about the frequency of transactions, the amount of money paid per transaction, and Agent Brunholtz's testimony about the market price of crack in the St. Louis area, it is easy to come up with 36 grams of crack. Indeed, as we noted above, we do not even have to assume that Wade normally sold at a price of $100 per gram, because that would have led to a far greater amount (in the neighborhood of 60 grams for the period in question, not taking into account the amounts bought by the undercover agent). Just because the district court could have supported a finding of a higher price-to-quantity ratio based on the three transactions with the agent does not mean that it was compelled to use a statistical base of three deals as conclusive. Unlike the situation in *United States v. Howard*, 80 F.3d 1194 (7th Cir.1996), there was evidence on quantity before the court that met the reliability requirements under the Guidelines. Its conclusion, based on that evidence, was not clearly erroneous.

■ Finally, we address Wade's point about the inadequacy of the court's findings. He is right to point out that a reviewing court faced with such a scant record must do a considerable amount of digging to find out what the sentencing judge must have determined. Courts of appeals should not be put in a position of taking a form judgment, a boilerplate statement on findings, and the presentence report, and piecing together findings of fact. In many cases, this will be impossible, and we will be left with no alternative but to remand for further findings— an outcome that wastes both our time on appellate review and the district court's time on remand, particularly if it could have been avoided by taking enough time at sentencing to dictate specific findings on contested matters, as Federal Rule of Criminal Procedure 32(c)(1) requires. We urge the district courts to err on the side of caution in these matters, for the sake of everyone involved in the criminal justice process. Having said that, however, we acknowledge that in some

cases the issues are straightforward enough that it may not be reversible error for the district judge to describe on the record which documents or testimony formed the basis for its factual findings. See *United States v. McKinney*, 98 F.3d 974, 981–82 (7th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1119, 137 L.Ed.2d 319 (1997). That is what the judge did here. He had before him the presentence investigation report and objections, exhibits, sentencing testimony, and the argument of counsel. His brief statement indicated, as did the judge's statement in *McKinney*, that he was adopting the factual findings of the presentence report as his own. Furthermore, it is not clear to us that counsel clearly objected to the court's lack of findings, as opposed to reiterating her objections to the court's rejection of her substantive objections to the sentence. If no proper objection was made, Wade has waived this argument on appeal. Even if the point was not waived, however, we find that *McKinney* controls here.

For the foregoing reasons, we AFFIRM the judgment of the district court.