# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-3591 & 10-1355

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROSALIO CRUZ-REA and
ZOYLA GARCIA-REA,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 07 CR 41—**Richard L. Young,** *Chief Judge.*

ARGUED SEPTEMBER 8, 2010—DECIDED NOVEMBER 17, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
KANNE, *Circuit Judges*.

BAUER, *Circuit Judge.* Rosalio Cruz-Rea appeals his
conviction and sentence for conspiracy to possess with
the intent to distribute more than five kilograms of
cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),
and 846, and his conviction and sentence for possession
with intent to distribute 500 grams or more of cocaine

in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). Zoyla Garcia-Rea appeals her conviction and sentence for conspiracy to possess with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. These cases were consolidated for trial and appeal. We have reviewed the district court's legal conclusions de novo and its findings of fact for clear error.

## I. BACKGROUND

Law enforcement authorities launched an investigation in the summer of 2007 into the shipment of cocaine from California and Utah to Indianapolis, Indiana. During the course of this investigation, the Drug Enforcement Administration (DEA) obtained court authority to wiretap twenty-four telephone conversations which featured Spanish speakers using code language to discuss drug activities. One of these conversations involved an individual who offered to sell one kilogram of cocaine for $19,000. He described his cocaine as "good for the frying pan," which meant that his cocaine was of such high quality that it could be used to make crack cocaine. In another telephone conversation, the speaker disclosed his plan to ship cocaine from Utah to Indianapolis via a car hauler carrying a Ford Explorer. Although two witnesses testified to having these two conversations with Cruz-Rea on the telephone, Officer Marytza Toy was the only witness who actually testified that she recognized Cruz-Rea as the speaker in each of the twenty-four recorded conversations, including both of the conversations detailed above.

She based her identification on a fifteen second voice exemplar that she listened to at least fifty to sixty times. Admittedly unusual, this voice exemplar was actually a recording of Cruz-Rea's booking process, which consisted of Cruz-Rea saying his name, address, date of birth, and telephone number in English.

Following Cruz-Rea's arrest, a search of his three residences revealed cocaine and distribution materials in each residence, and handguns in the same room as the cocaine and distribution materials in two of the residences.

Near the conclusion of the investigation, authorities observed Garcia-Rea and others loading gift-wrapped packages into a Ford Focus. The DEA advised the Utah State Troopers of this information, and Trooper Nick Bowles then pulled over the Ford Focus for failing to have a license plate light. He noticed the gift-wrapped packages as he approached the car. During the traffic stop, Garcia-Rea and the passenger of the vehicle gave conflicting answers about where they were going; Trooper Bowles then searched the Ford Focus and arrested Garcia-Rea.

After being advised of her Miranda rights, Garcia-Rea admitted that she knew the gift-wrapped packages contained cocaine, that she was transporting the packages in exchange for $500, and that she had made two similar drug runs in the past.

The government called Jose Barragan as a witness during Appellants' consolidated trial. Barragan was a drug dealer, but he did not deal in cocaine and was never a part of Cruz-Rea's conspiracy. He testified that

Cruz-Rea and Jose Garcia Franco (Barragan's relative) conspired to traffic cocaine and that Cruz-Rea attempted to recruit Barragan into the conspiracy by offering to advance him one kilogram of cocaine for a later payment of $20,000. Although Barragan refused this offer, Franco nevertheless continued to inform Barragan about the extent of Franco and Cruz-Rea's drug operations. Barragan testified about these statements over Appellants' objections.

A jury found Cruz-Rea and Garcia-Rea guilty of conspiracy to possess with the intent to distribute more than five kilograms of cocaine and found Cruz-Rea guilty of possession with intent to distribute 500 grams or more of cocaine. The district court sentenced Cruz-Rea to 324 months in prison and Garcia-Rea to 120 months in prison. Cruz-Rea and Garcia-Rea now challenge (1) the admissibility of Officer Toy's voice identification testimony; (2) the admissibility of transcripts and their accompanying jury instructions; (3) the admissibility of Barragan's testimony; (4) whether the handguns found near cocaine distribution materials required an offense level increase during Cruz-Rea's sentencing; and (5) the admissibility of evidence recovered from the search of the Ford Focus.

## II. DISCUSSION

### A. Lay Opinion Voice Identification Testimony

We review the district court's admission of Officer Toy's voice identification testimony for abuse of discre-

tion. *United States v. Neighbors*, 590 F.3d 485, 492 (7th Cir. 2009).

Cruz-Rea argues that Officer Toy's voice identification testimony was improper because the government laid insufficient foundation under Federal Rule of Evidence 901(b)(5). Rule 901(b)(5) provides that the identification of a voice, "whether heard firsthand or through mechanical or electronic transmissions or recording," may be established by opinion testimony that is "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed. R. Evid. 910(b)(5). We have consistently interpreted this rule to require that the witness have only "minimal familiarity" with the voice. *Neighbors*, 590 F.3d at 493; *United States v. Recendiz*, 557 F.3d 511, 527 (7th Cir. 2009). Once the court admits voice identity testimony, opposing counsel may cast doubt upon the witness' opinion through cross-examination, additional testimony, or other evidence. *See, e.g., United States v. Jones*, 600 F.3d 847, 857-58 (7th Cir. 2010); *Neighbors*, 590 F.3d at 494. It is ultimately the trier of fact's responsibility to determine the accuracy and reliability of the identification testimony, and when reaching its determination, the trier of fact may consider circumstantial evidence that tends to corroborate or contradict the identification. *Neighbors*, 590 F.3d at 493-94; *United States v. Mansoori*, 304 F.3d 635, 665 (7th Cir. 2002); *United States v. Degaglia*, 913 F.2d 372, 376 (7th Cir. 1990).

We cannot say as a matter of law that the low bar of minimal familiarity was not met in this case. Officer Toy

testified that she became familiar with Cruz-Rea's voice by listening to an approximately fifteen second voice exemplar at least fifty to sixty times. Officer Toy then identified Cruz-Rea's voice on twenty-four wiretapped telephone conversations, including a conversation in which Cruz-Rea offered to sell cocaine that was "good for the frying pan" and a conversation in which Cruz-Rea discussed his plan to ship cocaine to Indianapolis via a car hauler carrying a Ford Explorer. Two different witnesses testified to having these exact conversations with Cruz-Rea on the telephone. Although neither of the two witnesses offered any voice identification testimony in court, their corroborating testimony tends to establish the accuracy of Officer Toy's voice identification. Given the length of the voice exemplar and the number of times that Officer Toy listened to the exemplar, the district court did not abuse its discretion in determining that the government had laid sufficient foundation for Officer Toy's voice identification testimony under Rule 901(b)(5). *See Neighbors*, 590 F.3d at 493-94. The accuracy and reliability of the testimony was a question for the jury to weigh, and the court properly admitted the corroborating testimony to aid the jury in this role. *Jones*, 600 F.3d at 858. We stress, however, that we arrive at this conclusion without the benefit of empirical evidence on the reliability of voice identifications, and as previously cautioned by this court in *Jones*, we can imagine a case in which the foundation for the voice identification testimony was so flimsy as to be deemed insufficient. *Id.*

Cruz-Rea also argues that Officer Toy's voice identification was unhelpful and therefore inadmissable

under Federal Rule of Evidence 701 because the jury could have listened to the tapes and identified the voices without the aid of Officer Toy's opinion. Rule 701 states that lay opinion is proper when it is "(a) rationally based on the perception of the witness, (b) *helpful* to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added). Although Rule 701 requires that testimony be "helpful," we have never held that testimony is unhelpful merely because a jury might have the same opinion as the testifying witness. *See, e.g.*, *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009); *United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990). Accordingly, we affirm the district court's ruling on this issue.

### B. Transcripts of Wiretapped Telephone Conversations

Appellants challenge the district court's decision to (1) admit the government's transcripts of twenty-four wiretapped telephone conversations into evidence; (2) allow the jury to use transcripts that identified the alleged speakers by name; and (3) permit the jury to view the transcripts during deliberation. We review these rulings for abuse of discretion. *United States v. Breland*, 356 F.3d 787, 793-95 (7th Cir. 2004). Appellants also argue that the district court committed reversible error when instructing the jury on the proper role of the transcripts. We review the district court's instructions

de novo. *United States v. Jefferson*, 334 F.3d 670, 672 (7th Cir. 2003).

Although district courts exercise wide discretion when determining whether juries may use written transcripts as aids while listening to audiotape recordings, this court has noted that "[t]ranscripts of recorded conversations are a virtual necessity when the conversations take place in Spanish and are admitted into evidence before an English-speaking jury." *Breland*, 356 F.3d at 794; *United States v. Nunez*, 532 F.3d 645, 651 (7th Cir. 2008). If the recorded conversations were played for the jury (as was the case here), the district court has the discretion to permit the use of transcripts during jury deliberations. *Breland*, 356 F.3d at 794. The names of the alleged speakers may be printed on the transcripts if a person familiar with the voices testified as to the identity of the speakers. *Breland*, 356 F.3d at 795. However, when a district court admits a transcript into evidence, the court must instruct the jury that the tape is the primary evidence, that the transcript is given to assist the jury in evaluating the recording, and "that if the jury determines that the transcript is in any respect incorrect, it should disregard it to that extent and rely on its own interpretation of the recording." *Nunez*, 532 F.3d at 651. We afford the district court substantial discretion with respect to the precise wording of the instruction, remembering that reversal is allowed only when the instruction as a whole insufficiently informs the jury of the law. *United States v. Madoch*, 149 F.3d 596, 599 (7th Cir. 1998); *United States v. Macey*, 8 F.3d 462, 468 (7th Cir. 1993).

There is nothing in the record or Appellants' briefs to suggest that the district court abused its discretion in (1) admitting the transcripts at trial; (2) allowing the jury to use transcripts that named the Appellants as the speakers; and (3) permitting the jury to use the transcripts during deliberations. Appellants' briefs merely appear to urge this court to reverse its longstanding precedent. We decline the invitation to do so. However, Appellants' arguments about the proffered jury instructions require more attention.

Before these transcripts were admitted into evidence and used by the jury, the district court gave the following oral instruction:

> These transcripts, ladies and gentlemen, are provided to aid you in understanding the telephone calls. These telephone calls for the most part are in Spanish. I don't understand them; I don't think you would understand them either. Even if you did have some type of knowledge of the Spanish language, you may have a different interpretation than others on the jury who may know a little bit of Spanish or may know none. Why we have interpreters in the Court during these trials is so that you all will be considering the same evidence. . . .

> You make a determination regarding the credibility and trustworthiness of the witness and the translation. That's your job to do. *But the reason we do have interpreters is so that we have one interpretation so that you all consider that, and if each of you knew a different version of the Spanish language, I would tell you*

> *and instruct you [that] you cannot consider your own knowledge of Spanish; you must go with the translation. . . .*
>
> *The evidence is the tapes*, the audio, and the translation is to give you an assistance in understanding the evidence as it comes from the audio.

Transcript of Jury Trial, Volume II, at 241-42, *United States v. Cruz-Rea*, (2009) (No. 07 CR 41). Appellants contend that the district court improperly instructed the jury to (1) consider the translation, not the recording, as the evidence; and (2) consider only the transcripts to the extent that the transcripts and the recording differed. We disagree. Appellants focus their attention on the portion of the instruction that prohibits the jurors from considering their own knowledge of Spanish, but they ignore the portion of the instruction clarifying the purpose of the transcripts: "Even if you did have some type of knowledge of the Spanish language, you may have a different interpretation than others on the jury . . . . Why we have interpreters in the Court during these trials is so that you all will be considering the same evidence." To avoid any lingering confusion, the judge clarified that "[t]he evidence is the tapes." We find that an instruction informing the jury to consider only the transcripts before it, as opposed to fashioning its own translation, cannot be read as an instruction to treat the transcripts as the evidence. This instruction did not misstate the law, mislead the jury, omit relevant portions of the law, or unduly emphasize any part of the evidence. *See United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000). Although the district court judge could

have phrased the instruction differently, the instruction sufficiently informed the jury of the law and the jury's role. *See Madoch*, 149 F.3d at 599. We therefore affirm the district court's rulings on the transcripts and their accompanying instructions.

### C.  Non-Hearsay Coconspirator Statements

We review the district court's decision to admit non-hearsay coconspirator statements under Federal Rule of Evidence 801(d)(2)(E) for abuse of discretion. *United States v. Prieto*, 549 F.3d 513, 523 (7th Cir. 2008).

A statement made by a member of a conspiracy is admissible pursuant to Rule 801(d)(2)(E) if the government proves by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *Id.* at 523. Only the third prong is in dispute. In order to satisfy the "in furtherance" requirement, the coconspirator's statement "need not have been exclusively, or even primarily, made to further the conspiracy." *United States v. Singleton*, 125 F.3d 1097, 1107 (7th Cir. 1997). The government has satisfied its burden even if the statement is susceptible to alternative interpretations, so long as "some reasonable basis exists for concluding that the statement furthered the conspiracy." *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989). This court has repeatedly held that a statement attempting to recruit new members to the conspiracy is "in furtherance" of the conspiracy. *See, e.g.,*

*United States v. Haynes*, 582 F.3d 686, 705 (7th Cir. 2009); *United States v. Price*, 516 F.3d 597, 607 (7th Cir. 2008); *United States v. Skidmore*, 254 F.3d 635, 638 (7th Cir. 2001).

The government called Barragan as a witness and elicited testimony about statements that Cruz-Rea made to Franco (Barragan's relative). Without question, Cruz-Rea and Franco were members of a conspiracy to sell cocaine and Cruz-Rea attempted to recruit Barragan into the conspiracy by offering to advance Barragan one kilogram of cocaine for a later payment of $20,000. Appellants concede that this attempted recruitment was "in furtherance" of the conspiracy. *See Haynes*, 582 F.3d at 705. After the attempted recruitment, Franco and Barragan had many conversations about the cocaine conspiracy. Franco disclosed that his cocaine supplier was Cruz-Rea, that Cruz-Rea provided the cocaine on consignment, and that Franco rented apartments in Indianapolis for Cruz-Rea. Although Barragan believes Franco's statements were made, at least in part, because Franco was a good friend, it is also possible that Franco made these statements in an attempt to entice Barragan into the cocaine conspiracy. *See Haynes*, 582 F.3d at 705 (finding that discussions of prior criminal acts were arguably an attempt to recruit a new member into a conspiracy). The trial court found that Franco's statements were in furtherance of the conspiracy because they were arguably made to recruit a new member into the conspiracy; in doing so, we cannot say that the court abused its discretion. *See id.* at 705.

### D. Cruz-Rea's Offense Level Increase

We apply a clearly erroneous standard to factual findings made during the district court's assessment of the United States Sentencing Guidelines' offense levels. *United States v. Wade*, 114 F.3d 103, 105 (7th Cir. 1997). The district court's findings are clearly erroneous only when, "after considering all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996). Thus, when a district court chooses between two permissible inferences from the evidence, the factual findings cannot have been clearly erroneous. *Wyatt*, 102 F.3d at 246. Stated otherwise, "[t]he task on appeal is not to see whether there is any evidence that might undercut the district court's finding; it is to see whether there is any evidence in the record to support the finding." *Wade*, 114 F.3d at 105.

The Sentencing Guidelines advise courts to increase the offense level by two when the offense in question involves the possession of a dangerous weapon, including a firearm. U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2008). A comment to these Guidelines explains that "[t]he adjustment should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." *Id.* at cmt. n.3 (emphasis added). Here, authorities searched Cruz-Rea's residences and found two firearms in the same location as cocaine and distribution materials. Despite Cruz-Rea's assertions that he planned to sell the guns,

it was not "clearly improbable" that they were used during Cruz-Rea's drug transactions. The district court's choice between the two alternative explanations for the firearms was a choice between two permissible inferences based on the evidence. We therefore cannot say with definite and firm conviction that a mistake has been made. Accordingly, we find no clear error with the district court's factual findings and we affirm the offense level increase.

### E. Suppression of Evidence Recovered from a Vehicle Search

We review the district court's determination of probable cause de novo and its factual findings for clear error. *United States v. Washburn*, 383 F.3d 638, 642 (7th Cir. 2004).

A warrantless search is per se unreasonable under the Fourth Amendment, subject to a few well-established exceptions. *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (7th Cir. 2009). Under the automobile exception to the warrant requirement, a law enforcement officer may conduct a warrantless search of a vehicle when, based on the totality of the circumstances, he has probable cause to believe that the vehicle contains contraband or evidence of a crime. *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009). Probable cause requires only a probability, rather than an absolute certainty, that contraband or evidence will be found. *Id.* When making the probable cause determination, law enforcement officers are permitted to draw reasonable inferences from their training and experience. *Id.* However, when a

finding of probable cause is supported by information from a confidential informant, the sufficiency of the probable cause determination hinges on the confidential informant's reliability, veracity, and basis of knowledge. *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). In assessing the credibility of an informant, we consider whether the informant (1) possessed firsthand knowledge; (2) provided sufficient details to law enforcement; (3) relayed information that was later corroborated; and (4) testified at a probable cause hearing. *Id.* No single factor is dispositive, and "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999). Additionally, we consider the informant's admission of culpability as an indication of veracity. *United States v. Mitten*, 592 F.3d 767, 774 (7th Cir. 2010), quoting *United States v. Harris*, 403 U.S. 573, 583, (1971) ("Admissions of crime . . . carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.").

Trooper Bowles pulled over the Ford Focus after noticing that it did not have the required license plate light. The parties do not dispute that Trooper Bowles possessed sufficient reasonable suspicion under *Terry* to stop the vehicle. *See Terry v. Ohio*, 392 U.S. 1 (1968). The parties only dispute whether Trooper Bowles had probable cause to search the vehicle after the original *Terry* stop had concluded. Appellants argue that the informant's information did not support probable cause because the informant was a drug addict and convicted felon who had never provided

information to law enforcement before. To support their argument, Appellants highlight a number of details that the informant could not provide. However, instead of focusing on the details that the informant failed to disclose, we focus on the information that the informant actually provided.

Immediately after his arrest, the informant admitted his own culpability and told police that Cruz-Rea was going to use a Ford Focus to transport a shipment of cocaine from Utah to Indianapolis. Although the informant could not confirm that the cocaine would be concealed inside gift-wrapped packages, he stated that Cruz-Rea had previously shipped cocaine under that disguise. And despite being unable to confirm the exact date the Ford Focus would depart for Indianapolis, the informant revealed that the vehicle would leave within one or two days. The informant also told police that Cruz-Rea used a post office box that was listed under the informant's name. Prior to stopping the Ford Focus, authorities corroborated all of the informant's information. Upon pulling over the Ford Focus, Trooper Bowles immediately noticed the gift-wrapped packages in the backseat. His suspicions were further aroused when the passenger and driver of the Ford Focus told conflicting stories about where they were headed. We find that the informant's admission of culpability, the corroboration of the informant's story, and the driver's and passenger's conflicting stories provided Trooper Bowles with probable cause to search the vehicle. We therefore affirm the district court's determination of

probable cause, finding the automobile exception to the warrant requirement satisfied.

### III. CONCLUSION

For the reasons discussed above, we find no error with the district court's legal conclusions or findings of fact. We therefore AFFIRM the convictions and sentences of Cruz-Rea and Garcia-Rea.