In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-2715

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHAZARIYAH F. HIBBETT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:21-cr-50011-1 — **Iain D. Johnston**, *Judge.*

ARGUED OCTOBER 24, 2023 — DECIDED MARCH 28, 2024

Before ROVNER, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In this appeal, defendant
Shazariyah Hibbett challenges his sentence for being a felon
in possession of a firearm. Hibbett argues that the district
court erred in applying a two-level enhancement under
United States Sentencing Guideline § 3C1.2 for reckless en-
dangerment during flight. Hibbett's theory is that he was
merely a passenger in a car that recklessly fled from police
and that he did not induce the driver to flee. We find no error.

The evidence before the district court at Hibbett's sentencing hearing—including video recordings of the car's dramatic flight from police and statements from the driver that Hibbett twice directed her to continue fleeing—supported the enhancement to his guideline calculation.

Hibbett also argues, for the first time on appeal, that Northern District of Illinois Local Rule 79.1, which deals with control of trial exhibits, conflicts with Federal Rule of Criminal Procedure 55. Hibbett urges this court to invalidate Local Rule 79.1. We decline to do so. Hibbett has not shown how application of the local rule to his case caused him any harm. His appeal of a criminal sentence is not the proper forum for his more general challenge to the local rule. His arguments against Local Rule 79.1 are better directed to the Advisory Committee for the Local Rules of the United States District Court for the Northern District of Illinois. We affirm the district court's judgment.

I.   *Facts and Procedural History*

On October 27, 2020, defendant Shazariyah Hibbett was riding in the front passenger seat of a car driven by Kenyesha Holliman. An unmarked police car began following their car, which police had noticed had unlawfully tinted windows. A Department of Homeland Security helicopter was also flying over the area. Both the police squad car and helicopter recorded videos of the key events, and the videos are part of the record in this appeal.[1]

---

[1] The helicopter was part of a joint effort among the Rockford Police Department and other law-enforcement agencies.

The police activated the emergency lights on their car as Ms. Holliman was turning right at a stop sign. Almost immediately after the police lights came on, Ms. Holliman's car sped away. The police did not try to keep up with the fleeing car but instead asked the officers in the helicopter to track it. Ms. Holliman accelerated rapidly, ran multiple stop signs, struck a parked vehicle, drove through an open field, and eventually came to a stop in front of a residence after striking a curb. Ms. Holliman and defendant Hibbett got out of the car and fled on foot. The helicopter video shows Hibbett dropping an object as he fled from the stopped car. Police later recovered the item, a loaded .45 caliber semi-automatic handgun.

Hibbett was eventually apprehended and indicted under 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. He pled guilty. Under the Sentencing Guidelines, Hibbett's base offense level was 24 because he had two prior convictions for crimes of violence or controlled substance offenses. See U.S.S.G. § 2K2.1(a)(2). The parties agree that the base offense level was correct. The presentence report recommended a three-level reduction for acceptance of responsibility, which is not disputed.

The presentence report also recommended a two-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight. Hibbett objected. The reckless endangerment enhancement made his total offense level 23. With his criminal history category of V, the advisory guideline range was 84–105 months in prison.

At the sentencing hearing, Hibbett argued that the reckless endangerment enhancement should not apply because there was not sufficient evidence that he induced Ms. Holliman to

flee from police. In particular, he argued that the evidence that he told Ms. Holliman to "keep going" did not show whether he gave that instruction before or after they realized they were being followed by police.

To support the enhancement, the government introduced the DHS helicopter video and the police dashboard camera video. The government had also planned to play a jail call recorded on October 28, 2020 between Ms. Holliman and an unidentified person. Technical difficulties prevented that recording from being played in the courtroom. The parties agreed that Special Agent Dan Bergagna from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who had listened to the recording previously, could testify to its contents.

Agent Bergagna explained that in the recording, Ms. Holliman discussed the events of October 27, 2020, and being charged with aggravated fleeing to elude as a result. Ms. Holliman said that she had become nervous and afraid when Hibbett told her that he believed somebody was following them. Ms. Holliman explained that she began to speed up and that Hibbett had a gun on his lap while she was driving the car. Ms. Holliman also said that once they finally came to a stop and exited the car, Hibbett told her to "keep going."

The district judge then asked Agent Bergagna a few additional questions about Ms. Holliman's recorded jail call. Agent Bergagna clarified that Ms. Holliman said on the call that "Mr. Hibbett was explaining to her that he thought that people were chasing them and he didn't realize who it was." Agent Bergagna also explained that Ms. Holliman said, "she didn't know it was the police and Mr. Hibbett told her to basically keep driving and get away from the people chasing

them." Ms. Holliman also said in the jail call that she believed the police vehicle did not have its lights on.

The district judge applied the enhancement after finding by a preponderance of the evidence that Hibbett induced Ms. Holliman's flight. Hibbett was sentenced to 90 months in prison. This appeal followed.

II. *Reckless Endangerment Sentencing Enhancement*

A.  *Standard of Review*

"We review *de novo* whether the factual findings of the district court adequately support the imposition of the enhancement." *United States v. Barker*, 80 F.4th 827, 834 (7th Cir. 2023), quoting *United States v. Brown*, 843 F.3d 738, 742 (7th Cir. 2016). "We review for clear error the district court's factual determinations underlying the application of the Guidelines…." *United States v. Prieto*, 85 F.4th 445, 448 (7th Cir. 2023). "A district court need find only, by a preponderance of the evidence, that the facts are sufficient to support an enhancement." *Id.* "[W]hen a district court chooses between two permissible inferences from the evidence, the factual findings cannot have been clearly erroneous." *United States v. Cruz-Rea*, 626 F.3d 929, 938 (7th Cir. 2010). "The task on appeal is not to see whether there is any view of the evidence that might undercut the district court's finding; it is to see whether there is any evidence in the record to support the finding." *United States v. Wade*, 114 F.3d 103, 105 (7th Cir. 1997).

B.  *Reckless Endangerment During Flight*

Section 3C1.2 states: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." Application Note 5 to § 3C1.2 explains

that "the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." Therefore, "'some form of direct or active participation … is necessary [in order] for' the enhancement to apply to a passenger." *United States v. Seals*, 813 F.3d 1038, 1046 (7th Cir. 2016) (footnote removed), quoting *United States v. McCrimon*, 788 F.3d 75, 79 (2d Cir. 2015). In addition, for § 3C1.2 to apply, the defendant must have known he was fleeing from law enforcement. See *United States v. Hayes*, 49 F.3d 178, 183–84 (6th Cir. 1995).

Here, circumstantial evidence in the record of flight and inducement supported the district court's decision to apply the enhancement. The court found (1) Hibbett knew the police were following them when the flight started, (2) the flight created a substantial risk of death or serious bodily injury, and (3) Hibbett induced Ms. Holliman to engage in the flight. All of these factual findings were supported by the evidence. We address each finding in turn.

### 1. *Knowledge of Law Enforcement*

The district court explained at sentencing that the police car dashboard video showed that as soon as the police activated their emergency lights, the car in which Hibbett was a passenger "immediately accelerates rapidly at an extremely high rate of speed." It was reasonable for the district court to infer from that timing that Hibbett knew as Ms. Holliman was fleeing that law enforcement had been following them.

### 2. *Substantial Risk of Death or Serious Bodily Injury*

The district court then found, based on the video exhibits, that the car's flight created a substantial risk of death or

serious bodily injury. The videos show erratic, high-speed driving through a residential neighborhood, off-road driving through a field, and collisions with multiple obstacles. The district court's factual finding on this point had ample support. See *United States v. Thomas*, 294 F.3d 899, 907 (7th Cir. 2002) (driving at high rate of speed through residential neighborhood posed danger to bystanders); *United States v. Velasquez*, 67 F.3d 650, 655 (7th Cir. 1995) (flight from scene at high rate of speed on residential street was enough to support enhancement under § 3C1.2); *United States v. Woody*, 55 F.3d 1257, 1274 (7th Cir. 1995) (flight from police resulting in a high-speed chase warranted § 3C1.2 enhancement).

### 3. *Inducement*

Because Hibbett was not driving the car, the enhancement could apply only if Hibbett aided or abetted, counseled, commanded, induced, procured, or willfully caused Ms. Holliman's reckless driving. See U.S.S.G. § 3C1.2 cmt. n.5. In finding that Hibbett induced her to flee, the district court relied on *United States v. Luqman*, 130 F.3d 113 (5th Cir. 1997), where the defendant was also a passenger in a car that fled from law enforcement officers at high speed. When the car was being pulled over by law enforcement, the defendant had told the driver that he had drugs on his person and that the driver needed to do something or they were going to jail. That statement was sufficient to find that the defendant induced the driver's reckless flight and that the enhancement should be applied to the passenger's guideline calculation. *Id.* at 116–17.

Similarly, here, evidence shows that Hibbett told the driver to "keep driving" once he noticed they were being followed by another car. Hibbett did not testify at the sentencing hearing, but he argues that he gave Ms. Holliman this

instruction before he knew they were being followed by law enforcement.

The record does not indicate clearly whether Hibbett gave his "keep driving" directive before or after he realized they were being followed by law enforcement. The PSR stated simply that Ms. Holliman had been driving the car "while the defendant had a firearm on his lap and told her to 'keep going.'" This account does not resolve definitively whether Hibbett gave the instruction before or after the police car lights were activated. Nor does Ms. Holliman's recorded jail call shed light on whether Hibbett knew they were being followed by police when he told her to "keep driving." She said, correctly or not, only that *she* did not know at that time whether it was police.

Other evidence, however, supports the district court's finding that Hibbett induced Ms. Holliman to flee the police. Evidence at the sentencing hearing established clearly that Hibbett also instructed Ms. Holliman to "keep going" once they had exited the car and there was no doubt they knew they were being followed by the police. It is not unreasonable to infer that Hibbett urged her to flee moments earlier after the police activated their lights, when she sped away.

Further, there is no evidence that Ms. Holliman had any motive of her own for fleeing the police, especially in such a dangerous way. Hibbett, on the other hand, was sitting with a gun in his lap. He was a convicted felon whose mere possession of the firearm was a felony. These facts allow reasonable inferences both that Hibbett had the ability to control the driver's behavior during the flight and that he had a strong motive to encourage flight from law enforcement. See *United States v. Conley*, 131 F.3d 1387, 1391 (10th Cir. 1997)

("Appellants both had guns and the driver did not, support-
ing the conclusion that Appellants had the ability to control
the driver's behavior during the chase"). On these facts, the
district court could use its common sense to find it was more
likely than not that Hibbett induced Ms. Holliman to flee law
enforcement. See *Cruz-Rea*, 626 F.3d at 938 ("when a district
court chooses between two permissible inferences from the
evidence, the factual findings cannot have been clearly erro-
neous"). The district court did not err by applying the two-
level enhancement for reckless endangerment.

III. *Local Rule 79.1*

The defense, for the first time on appeal, challenges North-
ern District of Illinois Local Rule 79.1, which states in relevant
part:

> Records of the Court
>
> (a)  Retention of Exhibits. Exhibits shall be re-
> tained by the attorney producing them unless
> the court orders them deposited with the clerk.
> In proceedings before a master or other like of-
> ficer, the officer may elect to include exhibits
> with the report.
>
> (b)  Availability of Exhibits. Exhibits retained by
> counsel are subject to orders of the court. Upon
> request, counsel shall make the exhibits or cop-
> ies thereof available to any other party to enable
> that party to designate or prepare the record on
> appeal.

The defense argues that this rule is inconsistent with Federal
Rule of Criminal Procedure 55, which instructs: "The clerk of
the district court must keep records of criminal proceedings

in the form prescribed by the Director of the Administrative Office of the United States Courts. The clerk must enter in the records every court order or judgment and the date of entry." The defense theory is that any exhibits relied upon by a court in rendering its decision are judicial records and therefore must be retained by the clerk of the district court, not by the parties.

In this case, the DHS helicopter video and the police dashboard camera video were shared with the defendant's trial counsel, the probation office, and the district court ahead of the defendant's sentencing hearing. The district judge relied upon these exhibits during the sentencing. However, the exhibits were never filed nor ordered to be filed on the docket, and thus were not in the possession of the clerk's office.

The defendant's appellate counsel, who did not represent him in the district court, requested the video exhibits from the clerk of the Northern District of Illinois. The clerk's office told counsel to request the exhibits from the government because, under Local Rule 79.1, the exhibits were maintained by the parties and not the clerk's office. The government provided the video exhibits to the defendant's appellate counsel promptly upon his request. The government also filed a motion in the district court to supplement the record on appeal with the video exhibits, and that motion was granted. The exhibits are properly before this court on appeal.

Local federal court rules may not conflict with federal law or the Federal Rules of Procedure. See 28 U.S.C. § 2071(a). We are not as confident as defense counsel that Local Rule 79.1 conflicts with Federal Rule of Criminal Procedure 55. For one thing, fourteen other district courts around the country have similar local rules. See Gov't Appendix 60–65. Additionally,

the advisory committee notes to Federal Rule of Appellate Procedure 11 seem to endorse the practice of the Northern District of Illinois:

> The custody of exhibits is often the subject of local rules. Some of them require that documentary exhibits must be deposited with the clerk. See Local Rule 13 of the Eastern District of Virginia. Others leave exhibits with counsel, subject to order of the court. See Local Rule 33 of the Northern District of Illinois [predecessor to current Local Rule 79.1]. If under local rules the custody of exhibits is left with counsel, the district court should make adequate provision for their preservation during the time during which an appeal may be taken, the prompt deposit with the clerk of such as under Rule 11(b) are to be transmitted to the court of appeals, and the availability of others in the event that the court of appeals should require their transmission.

Keeping in mind that physical exhibits in criminal cases can include weapons, ammunition, explosives, drugs, cash, and child pornography, such exhibits may well be safer in the custody and control of the prosecution, at least in routine situations.

But in any event, this appeal is not the appropriate forum to address the defense's concerns with Local Rule 79.1, at least in the absence of a plausible argument that the rule caused him harm. Instead, the defense's concerns should be directed to the Advisory Committee for the Local Rules of the United States District Court for the Northern District of Illinois. That

body has the power to review proposals to amend local rules
and to recommend changes to the judges of the court.

The judgment of the district court is

AFFIRMED.