# United States Court of Appeals
## For the First Circuit

No. 15-2467

UNITED STATES OF AMERICA,

Appellee,

v.

JESÚS HUMBERTO VEGA-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Franco L. Pérez-Redondo, with whom Eric Alexander Vos, Federal Public Defender, Vivianne M. Marrero, Assistant Federal Public Defender, Supervisor, Appeals Section, and Liza L. Rosado-Rodríguez, Research and Writing Specialist, were on brief for appellant.

Juan Carlos Reyes-Ramos, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellee.

August 2, 2017

**THOMPSON**, **Circuit Judge**. Appellant Jesús Humberto Vega-Rivera ("Vega"), was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One), and illegal possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count Two). Pursuant to a plea agreement, Vega pled guilty to both counts. At sentencing, the district court declined to follow the plea agreement's recommendations, calculated the applicable Guidelines range at 46 to 57 months, and sentenced Vega at the top of the Guidelines range to 57 months' imprisonment. Vega appeals his sentence arguing that: (1) the district court improperly applied a two-level enhancement pursuant to United States Guidelines Manual ("U.S.S.G.") § 3C1.2 for reckless endangerment while fleeing from law enforcement; (2) the district court abused its discretion in imposing a curfew and electronic monitoring as conditions of his supervised release; and (3) that his sentence is substantively unreasonable. Finding his claims without merit, we affirm.

## Background

Because this appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009). Around 4:00 p.m. on April 14,

2015, Guaynabo City Municipal Transit Police attempted to pull Vega over for a routine traffic stop on Road 177 in Puerto Rico. Instead of pulling over when instructed by police, Vega took off, resulting in a high speed chase that ended when Vega crashed his car into another vehicle in the intersection of Road 177 and Francisco Sein Street. Immediately following the accident, Vega took off from the vehicle on foot, carrying a Glock 23 .40 caliber pistol in his hand. While fleeing, Vega decided to ditch his gun, throwing the Glock pistol into a bank parking lot on the northwest corner of the intersection. After abandoning the gun, Vega continued to run from police, but he eventually surrendered at an adjacent gas station and was placed under arrest. This incident took place near the Inter American University of Puerto Rico and several businesses and restaurants in the area.

Police later recovered the Glock pistol discarded by Vega in the bank parking lot. The handgun was loaded with a 22-round magazine filled with 20 bullets, modified to fire in fully automatic mode, and contained one round of ammunition already loaded in the chamber of the gun. During an inventory of Vega's car, police also found a bullet-proof vest and two additional Glock 22-round capacity magazines with 20 bullets in each. A records check of the Glock handgun showed that the gun was reported stolen in September 2009. Further investigation revealed that the Glock and accompanying ammunition were not manufactured in Puerto Rico

- 3 -

and must have been shipped or transported in interstate or foreign commerce.

Several hours after being taken into custody, Homeland Security Investigations agents interviewed Vega. At the interview, Vega waived his constitutional rights, including his right to have a lawyer present. Vega then told the investigators that three days prior to the incident, he had paid $400 for the Glock handgun already modified for fully automatic fire and the three accompanying ammunition magazines. Vega also told the special agents that he had just finished serving a three-and-a-half year prison sentence for narcotics. Further investigation confirmed that Vega had in fact been found guilty of possession of a controlled substance in July 2009.

Vega was subsequently charged in a two-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One) and illegal possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count Two).[1] Vega eventually pled guilty to both counts pursuant to a plea agreement. Under the terms of the plea agreement Vega's base offense level was set at twenty, pursuant to U.S.S.G. § 2K2.1(a)(4). His base offense level was then increased

---

[1] The indictment also contained a firearms and ammunition forfeiture allegation, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

by two levels because the firearm he possessed was stolen, pursuant to U.S.S.G. § 2K2.1(b)(4), and decreased three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. With these adjustments, Vega's total offense level was calculated at nineteen. The parties did not stipulate to Vega's Criminal History Category and agreed to a sentence within the applicable Guidelines range, depending on whatever the court determined Vega's Criminal History Category to be. Vega also agreed to waive his right to appeal if sentenced in accordance with the terms of the plea agreement.

The Pre-Sentence Investigation Report ("PSR") was originally prepared in September 2015 and revised in October 2015. Like the plea agreement, probation calculated Vega's base offense level at twenty, added two levels because the firearm he possessed was stolen, and subtracted three levels for acceptance of responsibility. Unlike the plea agreement, however, probation also added a two-level enhancement for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2, stating that Vega "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Consequently, the PSR calculated Vega's total offense level at twenty-one. The PSR also calculated Vega's Criminal History Category at III because of two prior convictions for possession and conspiracy to possess with intent to distribute

controlled substances in 2007 and 2008. With a total offense level of twenty-one and a Criminal History Category of III, the applicable Guidelines range was 46 to 57 months.

Vega filed objections to the PSR, including in relevant part, an objection to the application of the two-level enhancement for recklessly creating a substantial risk of death or serious bodily injury. Vega argued that his conduct "did not create a risk to others of the degree required by the Guidelines, therefore his actions were not reckless." Vega also argued that he did not create a substantial risk of death or serious bodily injury while fleeing from police because "[h]e did not brandish nor discharge[] the firearm . . . , [n]o one was injured . . . , [h]e did not want to use [the firearm] and did not use [it]," and he did not run into any individuals while fleeing.

At sentencing, Vega's counsel again argued that the two-level enhancement should not apply. Vega's counsel argued that "although [she] may concede that [Vega] acted recklessly and he created a risk, that risk had to be substantial; and [she] believe[d] that in this case [Vega's] actions . . . did not reach the level of substantial." The government agreed with defense counsel that Vega's actions did not rise to the level of creating a "substantial" risk. Probation, however, argued that the two-level enhancement was merited because:

the defendant disobeyed the officers and fled at a high rate of speed and crashed into another vehicle. This was the location near a college when he actually fled the scene. He got out of the car after crashing the other vehicle, ran with a gun in his hand. [Vega later discarded the gun in a public place.] And this all happened next to a college at 4:00 p.m. where students are around all the time. So we do believe that it was a substantial risk of death of any of those students, any other person driving a car, or just a person that was around.

The district court agreed with probation and applied the two-level enhancement for creating a substantial risk of death or serious bodily injury while fleeing from law enforcement. The court found that the sentence agreed to by the parties in the plea agreement "[did] not reflect the seriousness of the offense, [did] not promote respect for the law, [did] not protect the public from further crimes by Mr. Vega and [did] not address the issues of deterrence and punishment." Finding a total offense level of twenty-one, with a Criminal History Category of III, the court sentenced Vega at the top of the Guidelines range to 57 months' imprisonment. The court imposed a term of three years' supervised release to be served upon Vega's release from prison. The court also set a curfew and electronic monitoring as terms of Vega's supervised release. Vega's counsel objected to both terms of supervised release and again to the application of the two-level enhancement under U.S.S.G. § 3C1.2.

On appeal, Vega seeks to vacate his sentence, arguing that the district court erred in: (1) applying the § 3C1.2 two-level enhancement for reckless endangerment during flight and (2) imposing a curfew and electronic monitoring as conditions of his supervised release. Vega also argues that (3) his sentence is substantively unreasonable. We address each argument in turn.

## 1. U.S.S.G. § 3C1.2 Enhancement

Vega argues that the district court erred in increasing his base offense level by two levels pursuant to U.S.S.G. § 3C1.2. Vega argues that his actions did not rise to the degree of recklessness required and, even if his actions were reckless, they did not create a substantial risk of death or serious injury. The government argues that Vega's actions were sufficiently reckless and created a substantial risk to others.[2]

Section 3C1.2 provides that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law

_____

[2] As an initial matter, the government also argues that Vega waived the argument that his conduct was not reckless when his attorney stated at sentencing that "although [she] may concede that [Vega] acted recklessly and he created a risk, that risk had to be substantial; and [she] believe[d] that in this case [Vega's] actions [] did not reach the level of substantial." Because Vega's arguments fail on the merits, we need not address whether he waived his recklessness argument. See United States v. Llanos-Falero, 847 F.3d 29, 33 n.2 (1st Cir.), cert. denied, 137 S. Ct. 2229 (2017) ("Because the issues Llanos-Falero raises on appeal all fail, we bypass the appellate-waiver issue and proceed to the merits.").

enforcement officer, [his base offense level may be] increase[d] by 2 levels." "Recklessness requires that the defendant was 'aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" United States v. Carrero-Hernández, 643 F.3d 344, 348 (1st Cir. 2011) (citing U.S.S.G. § 2A1.4, cmt. n.1; U.S.S.G. § 3C1.2, cmt. n.2).

"We review a district court's interpretation of the 'legal meaning and scope' of a sentencing guideline de novo. However, 'we review the court's factfinding for clear error, giving due deference to the court's application of the guidelines to the facts.'" Id. at 349 (citing United States v. Thompson, 32 F.3d 1, 4 (1st Cir. 1994)).

### a. Recklessness

Contrary to Vega's contentions, there were sufficient bases to support the district court's finding that his conduct was reckless.

First, Vega's attempts to flee from officers resulted in a high-speed chase near a local university that only ended when he rammed his car into another vehicle. The intersection where the accident and subsequent chase (on foot) took place was in an active business area near several restaurants, fast-food spots, bars, and

a clinical laboratory.[3]  Such facts alone are sufficient to support the district court's finding that Vega's conduct was reckless. See United States v. Jimenez, 323 F.3d 320, 324 (5th Cir. 2003) (upholding district court application of a § 3C1.2 enhancement where defendant engaged officers in a high speed chase through business and residential areas late at night, defendant's conduct "exhibit[ed] a reckless disregard for the safety of various persons who resided on the street, those who might otherwise be present on the street, and the police officers involved in the pursuit"); United States v. Velasquez, 67 F.3d 650, 654-55 (7th Cir. 1995) (defendant fleeing scene at high rate of speed through residential neighborhoods supported § 3C1.2 increase).  And while the record does not indicate the specifics of the chase or accident, such as whether Vega crashed into a parked or moving vehicle, the precise speed at which he was driving, or whether individuals were located inside or near the vehicle at the time of the accident, Vega

---

[3] We take judicial notice of the Google map provided by the government identifying the area where Vega crashed his car and began his flight on foot from police.  See United States v. Burroughs, 810 F.3d 833, 835 n.1 (D.C. Cir. 2016) ("We grant the government's motion to take judicial notice of a Google map.  It is a 'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of identifying the area where Burroughs was arrested and the general layout of the block."  (quoting Fed. R. Evid. 201(b))).

proceeded to take off running with a loaded firearm in his hand in an area where students, various persons purchasing meals, and others may have been present. He then threw the loaded, fully automatic gun in a public parking lot. And, again, while the record does not indicate whether there were individuals located in the parking lot at the exact time when he discarded the gun, it is reasonable to infer that the gun, so casually tossed into a public arena, could have been found and resulted in injury to others. We therefore agree with the persuasive authority of our sister circuits and hold that the absence of such specific minutiae does not invalidate a finding that the defendant's actions were reckless where his actions grossly deviated from the standard of care that a reasonable person would exercise in the same situation. See United States v. Porter, 643 F. App'x 758, 760 (10th Cir. 2016) (unpublished) ("[The defendant argues these undisputed facts are insufficient, as a matter of law, to support the enhancement because the facts don't identify the speeds at which he drove, the specific traffic violations he committed, or any bystanders he actually placed in harm's way. But [the defendant] cites no authority supporting his argument that a person who flees in a vehicle to evade a law enforcement officer, drives at unspecified speeds, commits several traffic violations, crashes into a residential garage, and drops a fully-loaded semiautomatic pistol on the ground as he continues to flee on foot hasn't grossly

deviated from the standard of care that a reasonable person, rather than a reasonable fleeing criminal suspect, would exercise in the same situation."); United States v. May, 430 F. App'x 520, 526 (6th Cir. 2011) (unpublished) (affirming district court's application of the § 3C1.2 enhancement where defendant discarded a firearm in an area where "pedestrian traffic" was likely).

### b. Substantial Risk

Similarly, the district court properly found Vega's actions to present a substantial risk of harm here. In Carrero-Hernández we upheld a sentencing court's application of a § 3C1.2 enhancement when the appellant fled from police at forty-five miles per hour after realizing he was being followed on small back roads of a residential neighborhood in the early evening. 643 F.3d at 349. The appellant contended that his conduct "was not nearly so dangerous as other § 3C1.2 enhancement cases." Id. at 348. We noted that while it is true that more egregious conduct than that involved in Carrero-Hernández's case had resulted in the application of the § 3C1.2 enhancement, "[w]e have not held, however, that such wildly dangerous conduct is the minimum required under § 3C1.2." Id. at 349. Similarly here, Vega's conduct is sufficiently egregious to support the application of the § 3C1.2 enhancement. At the risk of being redundant, we repeat, Vega led officers on a high-speed chase at 4:00 in the afternoon, ran on public roads with a loaded fully-automatic gun in his hand, and

- 12 -

then threw the gun into a public parking lot where pedestrians were sure to frequent.  Such conduct could have very well resulted in substantial injury to others.  See id., 643 F.3d at 349 (noting that "in United States v. Chandler, 12 F.3d 1427 (7th Cir. 1994), the Seventh Circuit upheld a § 3C1.2 enhancement after a car chase that passed through a residential neighborhood at dusk, and during which the defendant 'traveled at speeds that ranged from thirty-five to fifty miles per hour while swerving from lane to lane to prevent the police from going around him.'  The court noted that this conduct 'might very well have resulted in injury' to others.").

**2. Curfew and Electronic Monitoring**

Vega also appeals the district court's imposition of a curfew and electronic monitoring as conditions of his supervised release.  Because Vega objected, we review the sentencing court's imposition of those conditions for abuse of discretion.  United States v. Garrasteguy, 559 F.3d 34, 40 (1st Cir. 2009) ("We review a sentencing court's decision to impose special conditions of supervised release for abuse of discretion.  If, however, a defendant has an opportunity to object to a special condition at sentencing, and stays silent, we review the imposition of a supervised release condition for plain error only." (citations omitted)).

Vega argues that the imposition of a curfew and electronic monitoring are not reasonably related to the nature and circumstances of his offense and therefore constitute a greater deprivation of liberty than is reasonably necessary.  The government argues that the court's imposition of the special conditions is reasonably related to Vega's history and characteristics, the nature and circumstances of the instant offense, and the need for deterrence, protection of the public and correctional treatment.

The district court can "impose any condition of supervised release that is reasonably related to (1) the defendant's offense, history, and characteristics; (2) the need to deter the defendant from further criminal conduct; (3) the need to protect the public from further crimes by the defendant; and (4) the effective educational, vocational, medical, or other correctional treatment of the defendant." United States v. York, 357 F.3d 14, 20 (1st Cir. 2004).  "[T]he critical test is whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release." Id. (citation omitted).  A special condition does not need "a written or oral explanation of the reasons supporting the condition if [this Court] can infer the [district] court's reasoning by comparing what was argued . . . [or what was] in the pre-sentence report with what the court did." Garrasteguy, 559 F.3d at 42.

Here, the district court's imposition of electronic monitoring and a curfew is sufficiently related to the defendant's offense, history, and characteristics. While the district court's explanation of its reasons for imposing the conditions is not robust, we can infer the district court's reasoning from the parties' arguments, the PSR, and what the court did. Vega's criminal history included two prior drug-related convictions and a more recent arrest for carrying and using a firearm without a license. Specifically, in May 2009 Vega was sentenced to a term of three years' imprisonment for possession of controlled substances. Soon after release, in May 2012, Vega was arrested and charged by the commonwealth for carrying and using a firearm without a license. The district court noted that "as happens too many times in the local court system the [weapons] charge was dismissed on speedy trial grounds but Mr. Vega was never recharged." And Vega's current offense again involved the illegal possession of a weapon. It can be inferred from these facts that the district court properly imposed the conditions because of Vega's history, the need to deter Vega from further criminal conduct, the need for heightened electronic supervision, and the need to protect the public from further crimes by the defendant. See York, 357 F.3d at 20.

## 3. Substantive Reasonableness

Finally, Vega challenges his sentence as substantively unreasonable. Vega argues that "the district court failed to adequately consider the arguments that were offered in favor of the sentence at the lower-end of the Guidelines range as calculated in the plea agreement" or in the district court's own Guidelines calculation of 46 to 57 months. "The hallmarks of a substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" United States v. Zapata-Vázquez, 778 F.3d 21, 24 (1st Cir. 2015) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). Moreover, "reversals in substantive reasonableness challenges are 'particularly unlikely when . . . the sentence imposed fits within the compass of a properly calculated [Guidelines sentencing range].'" United States v. Hernández-Maldonado, 793 F.3d 223, 227 (1st Cir.), cert. denied, 136 S. Ct. 522 (2015) (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 228–29 (1st Cir. 2015) (alterations in original)).

Here, Vega fails to demonstrate that his sentence was substantively unreasonable. In conducting its sentencing task, the district court noted Vega's prior convictions for possession and conspiracy to possess with intent to distribute controlled substances. It further took into account his personal history, as well as the nature and circumstances of the instant offense, remarking that:

Mr. Vega's offense involved 61 rounds of ammunition, 21 rounds loaded in a machine gun, and two additional magazines each loaded with 20 rounds, a bulletproof vest. He also [had] a previous arrest on a weapons charge, and, as I indicated, as happens too many times in the local court system the charge was dismissed on speedy trial grounds but Mr. Vega was never recharged. The Court also has taken into consideration the fact that he created a substantial risk to other persons when he fled from law enforcement.

Accordingly, the court offered "a plausible rationale" for its decision to sentence Vega at the top of the applicable Guidelines. See Zapata-Vázquez, 778 F.3d at 24.

## Conclusion

For the foregoing reasons, we affirm the district court's sentencing decisions.