In the

# United States Court of Appeals

### For the Seventh Circuit

No. 22-2764

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS BROOKS, II,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:22-CR-50001 — **Philip G. Reinhard**, *Judge.*

ARGUED JUNE 1, 2023 — DECIDED APRIL 30, 2024

Before EASTERBROOK, WOOD, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Thomas Brooks, II was charged with
and pleaded guilty to possessing a firearm as a convicted
felon in violation of 18 U.S.C. § 922(g). Brooks received an
above-Guidelines sentence of 96 months' imprisonment. On
appeal, Brooks challenges this sentence. Because the district
court's sentence was well within its discretion, we affirm.

## I. BACKGROUND

Brooks was leaving an Illinois apartment complex during the early afternoon of November 1, 2021, when he saw police officers waiting outside. He began to run. Brooks had several outstanding warrants, and the officers were there to arrest him. Police yelled for him to stop, but he disregarded their commands and continued running. Brooks reached into his waistband and threw an object into the grass. The foot chase continued to the front of the apartment complex, and Brooks reached into his waistband again. An officer unholstered his firearm, pointed it at Brooks, and ordered him to show his hands. Brooks tossed two more objects he had grabbed from his waistband and kept running. Soon thereafter, Brooks tripped, the police apprehended him, and they took him into custody.

Within a minute, officers retrieved the objects that Brooks had thrown during flight, which included a Glock 26 9mm firearm, loaded with one round in the chamber. The firearm was equipped with a "switch."[1] Law enforcement also recovered an extended magazine with thirty-one rounds of ammunition.

Brooks was indicted for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g). He pled guilty. Before sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The probation officer, using the United States Sentencing Guidelines, calculated an offense level of 19, based on the illegal firearm possession

---

[1] A "switch" is a device that turns a semi-automatic firearm into a fully automatic one. *United States v. Díaz-Rivera*, 957 F.3d 20, 22 (1st Cir. 2020); *United States v. Morgan*, 216 F.3d 557, 567 (6th Cir. 2000).

conviction, a two-level enhancement for recklessly creating a substantial risk of death or seriously bodily injury to another person in the course of fleeing from a law enforcement officer, and a three-level reduction for acceptance of responsibility. *See* U.S.S.G. §§ 2K2.1(a)(4)(B)(i)(I), (i)(II), & (ii)(I); § 3C1.2; § 3E1.1(a), (b). Combined with 14 criminal history points establishing a criminal history category VI, Brooks's offense level yielded an advisory guidelines range of 63 to 78 months in prison.

Brooks argued, in his sentencing memorandum and at sentencing, that the reckless endangerment enhancement should not apply because the government could not demonstrate that any of his actions "on the date of his arrest" created a "substantial risk of serious bodily harm."

At sentencing, to support the two-level enhancement, the government elicited testimony from Detective David Cerasa with the Rockford Police Department, who had participated in the arrest of Brooks on November 1, 2021. Detective Cerasa testified that once Brooks exited the back of the apartment complex, he immediately saw police approaching. In response, Brooks ran in the opposite direction, toward Detective Cerasa, who was surveilling the area from the parking lot of a neighboring apartment complex. After seeing Brooks drop an object to the ground and continue running, Detective Cerasa joined the pursuit. He saw Brooks reaching for his waistband. Suspecting that Brooks could be concealing a firearm, Detective Cerasa unholstered his firearm as he pursued Brooks, giving verbal commands for Brooks to stop running and to get on the ground. Brooks disregarded these commands but was eventually secured and arrested in the street directly in front of the apartment complex. On cross-

examination, Detective Cerasa testified that law enforcement was able to recover the firearm Brooks had thrown within 45 seconds to a minute. In addition to Detective Cerasa's testimony, the government introduced body camera footage showing the chase, civilians walking in and out of the apartment complex, and one individual on a porch.

Having considered the evidence, the district judge applied the two-level reckless endangerment enhancement. The court found several relevant facts that supported the enhancement, including (1) Brooks was actively fleeing from law enforcement; (2) the police chase occurred in the middle of the day through a public residential neighborhood with officers drawing their weapons; (3) Brooks threw a loaded firearm—made fully automatic by a switch—onto the grass near the apartment complex sidewalk leading to an entry door of the building; (4) the deadly weapon that Brooks tossed could have discharged when it hit the ground or been recovered by a child or adult in the area; (5) Brooks threw a loaded firearm and an extended magazine in an area were persons are normally coming and going from the complex. The district court found sufficient evidence that Brooks's actions supported the two-level enhancement.

Apart from challenging the reckless endangerment enhancement, Brooks also argued that his criminal history category overrepresented his criminal record. He maintained that when properly reviewed, one would notice that a majority of Brooks's criminal history points derived from his juvenile record, diminished culpability, and immaturity. For these reasons, Brooks argued that the two-level enhancement should not apply.

The district court disagreed. The district court concluded that Brooks's criminal history demonstrated a "steady progression" of the same criminal behavior all occurring relatively "close in time," negating Brooks's argument that his criminal history category of VI was overrepresented. Given Brooks's offense level and criminal history category, the court determined that the advisory guidelines range was 63 to 78 months.

After calculating the appropriate guidelines range, the court heard argument from the parties regarding the appropriate sentence. The government requested a sentence within the guidelines, and Brooks argued for a below-Guidelines sentence of 34 months pursuant to Guideline § 4A1.3(b)(1).

Considering the parties' arguments, the PSR, Brooks's allocution, and the written submissions, the court turned to the § 3553(a) factors to make its sentencing determination. In regard to the nature and seriousness of the offense conduct, the district court explained that Brooks had been convicted in this case of possessing a dangerous firearm. Additionally, the court found it troubling that Brooks's firearm had been converted to a "fully automatic" handgun increasing the weapon's "killing potential." The district court also took issue with Brooks's decision to possess an extended magazine with 31 rounds of ammunition, which the court viewed as a "propensity for violence." Thus, the court found Brooks's offense conduct of fleeing and discarding the firearm to be both serious and a substantial risk to the public. The district court also concluded that Brooks's possession of a loaded "fully automatic" weapon and the extended magazine warranted a higher sentence.

The district court found Brooks's mitigation arguments involving his personal history and characteristics of drug addiction, serious mental health history, and exposure to gun violence at a young age failed "to justify" Brooks carrying a dangerous automatic weapon in his neighborhood. While the court acknowledged that Brooks had been raised in a violent neighborhood and exposed to gun violence at an early age, Brooks had been reared in a loving family. Relying on communications from Brooks's family, the court noted that the defendant had been guided by both his mother and stepfather in the home, but still chose to join a street gang.

The court found Brooks's mitigating factors, however, to be outweighed significantly by numerous aggravating factors. It noted that, although Brooks was only twenty years old, he had already developed an extensive criminal record that started at the age of 14. The court observed that Brooks's "persistent criminal felony record" had amassed a substantial criminal history, including an adult criminal conviction for aggravated unlawful use of a weapon. The court found Brooks to be a repeat offender. More troubling, the court observed that Brooks had refused the reformative programming and counseling offered to him over the years through the juvenile justice system. The court also noted that Brooks's recent illegal use of a weapon conviction and sentence had failed to deter Brooks from engaging in further crime, given that he was on probation for that charge at the time of the instant offense. Another aggravating factor for the court was that Brooks was in possession of an additional clip with 31 rounds of ammunition on the day of his arrest. The court noted that, although Brooks was on pretrial release for various pending state charges, nothing deterred him from possessing a fully automatic weapon.

The court also discussed Brooks's "disrespect for the law," which was reflected in his failure to appear for court proceedings, his criminal behavior while on bond for various state offenses, and his disciplinary record in pretrial detention. The district court believed Brooks's steady delinquent criminal behavior and his conduct while detained all demonstrated that Brooks posed a "risk to the public" and that his "rehabilitative potential" was questionable.

After evaluating the sentencing factors found at 18 U.S.C. § 3553(a), the district court concluded that an above-Guidelines sentence of 96 months in prison was warranted in this case. The court later supplemented its sentencing decision to note that it would reach the same sentence even if Guideline § 3C1.2, the reckless endangerment enhancement, was inapplicable.

## II. ANALYSIS

On appeal, Brooks challenges his sentence on three grounds. First, Brooks argues that the district court erred in its application of a two-level enhancement under Guideline § 3C1.2 for reckless endangerment while fleeing from police. Second, Brooks argues that the district court failed to address one of his key mitigation arguments. Third, Brooks contends the district court erred in sentencing him above the Guidelines range, to 96 months' imprisonment, for the firearm violation. We address his procedural arguments first, then turn to the reasonableness of his sentence.

### A. Reckless Endangerment Sentencing Enhancement

We review *de novo*—take a fresh look at—whether a district court's factual findings support the imposition of the enhancement. *United States v. Hibbett*, 97 F.4th 477, 480 (7th Cir.

2024). We review the court's underlying factual determinations for clear error. *Id.* (quoting *United States v. Prieto*, 85 F.4th 445, 448 (7th Cir. 2023)). The district court's determination that Brooks recklessly endangered the life of another person is a finding of fact. *United States v. Chandler*, 12 F.3d 1427, 1433 (7th Cir. 1994). The clearly erroneous standard is deferential, and we will not disturb the district court's findings unless, after examining the evidence and the reasonable inferences therefrom, "we are left with the definite and firm conviction that a mistake has been made." *United States v. Ford*, 22 F.4th 687, 691 (7th Cir. 2022) (internal citations and quotations omitted); *United States v. Melendez*, 819 F.3d 1006, 1011 (7th Cir. 2016).

A district court may find facts sufficient to support an enhancement if they are established by a preponderance of the evidence. *Prieto*, 85 F.4th at 448. "The task on appeal is not to see whether there is any view of the evidence that might undercut the district court's finding; it is to see whether there is any evidence in the record to support the finding." *United States v. Wade*, 114 F.3d 103, 105 (7th Cir. 1997).

Under Guideline § 3C1.2, a defendant's offense level is increased by two if he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." A defendant acts recklessly when he is aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard it constituted a "gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. n.1, U.S.S.G. § 3C1.2 cmt. n.2. The government bears the burden of establishing, by a preponderance of the evidence, facts justifying an upward adjustment of a

defendant's base offense level. *United States v. Smith*, 210 F.3d 760, 762 (7th Cir. 2000).

On appeal, Brooks argues that the district court not only erroneously determined that § 3C1.2 applied to him, but also improperly based its § 3C1.2 determination on insufficient evidence. To support the two-level enhancement here, the government offered the testimony of Detective Cerasa, who testified that Brooks threw the loaded firearm and extended magazine near the apartment complex; body camera footage depicting Brooks fleeing from police in a residential neighborhood; and still images from the body camera that depicted civilians entering and exiting the apartment building and another individual on a porch. After reviewing the evidence, the court made several factual findings: (1) Brooks' weapon was a loaded firearm with a bullet in the chamber, a clip that had excess capacity, and an attached switch that made the gun fully automatic; (2) the police chase took place during the middle of the day in a residential, public neighborhood that appeared to be occupied by many people; (3) Brooks's actions caused Detective Cerasa to draw his weapon; (4) Brooks threw the firearm fairly close to the edge of one of the complex buildings near a sidewalk that led to one of the building's entry doors; and (5) Brooks later reached into his waistband and threw an extended magazine containing over 30 rounds of ammunition.

Based on these findings, the district court determined that Brooks was aware that he had created a substantial risk of death or serious bodily harm in three ways: by discarding the fully automatic weapon in a public area where it could have been recovered by a child or an adult; by throwing the dangerous weapon in such a careless manner that it could have

discharged and injured someone; and by reaching into his waistband, prompting officers to draw their weapons. Brooks raises three arguments for why these determinations are not supported by the evidence. We address each finding in turn.

### 1. Leaving the Gun in a Public Area

Based on the evidence, the district court found that Brooks discarded his gun in a public area, creating a substantial risk that himself or someone else could be harmed. The court also noted that if the police had not timely recovered the weapon, Brooks's loaded Glock could have been picked up by another adult or by a child. Brooks contends that the court's findings are unsupported by the record because the weapon was dropped in front of the police, recovered within 45 seconds of being discarded, and not dropped in a crowded area.

Brooks argues that the short time span the gun remained on the grass negates the probability of an adult or child being able to retrieve it. Brooks maintains that our decision in *United States v. Lard* supports his argument that the short time frame for when the police recovered the gun suspends the notion that someone other than the police could have found the discarded firearm. 327 F.3d 551 (7th Cir. 2003). Brooks's reliance on *Lard* is misplaced because there we recognized simply leaving a loaded weapon in a public place may warrant the district court imposing the § 3C1.2 enhancement especially where there is evidence that the public is able to easily access the gun's location. *Id.* at 553 (referencing *United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003)). Here, Brooks discarded a loaded gun outside of an apartment complex in the middle of the day, while civilians were nearby. This created a substantial risk that someone could find it.

Brooks also argues that unlike the defendant in *Lard*, who discarded his gun in a "heavily weeded" area when police were not around, Brooks dropped his gun "in the grass in front of the police, who were in close proximity to him." Brooks' position, however, overlooks the fact that he tossed a loaded fully automatic firearm in the back yard of an apartment complex with people coming and going. Recognizing the police did not need to do much to recover the gun after securing Brooks—they only needed to trace his short flight path—Brooks's action still created a substantial risk that the firearm lying in plain view would be recovered by an unsuspecting child or adult. Brooks seems to miss that whether it was 45 seconds or a full minute, there was a substantial risk, given the firearm's proximity to the apartment complex, that it could have been recovered by someone else.

Given the circumstances surrounding Brooks's decision to flee from police and throw a loaded firearm and an extended magazine in a public area, we are not left with a definite and firm conviction that the district court made a mistake in applying the enhancement. *Lard*, 327 F.3d at 553; s*ee also United States v. Kelley*, 40 F.4th 276, 285 (5th Cir. 2022) (the court found a "reckless endangerment" enhancement was more than plausible where the defendant discarded a pistol with twenty-one rounds in the magazine in a public area when running from police); *United States v. Gray*, 942 F.3d 627, 632 (3d Cir. 2019) (court determined there was a substantial risk of death or serious bodily injury where the defendant threw a loaded firearm down a street in a residential neighborhood in the vicinity of a police officer and at least one civilian and the firearm was recovered after a brief search of the area); *United States v. Vega-Rivera*, 866 F.3d 14, 19 (1st Cir. 2017) ("[W]hile the record does not indicate whether there were individuals

located in the parking lot at the exact time when he discarded the gun, it is reasonable to infer that the gun, so casually tossed into a public arena, could have been found and resulted in injury to others."); *United States v. Slaughter*, 386 F.3d 401, 404 (2d Cir. 2004) (per curiam) (determining that the enhancement was warranted after the defendant threw a loaded handgun in an area where children were playing); *Brown*, 314 F.3d at 1221 (concluding that the defendant's disposal of a gun in the presence of children "undoubtedly created a substantial risk of death or serious bodily injury to [the] children and to the other bystanders around the complex").

Brooks attempts to analogize his case to a more recent Sixth Circuit case coming out the other way, *United States v. Mukes*, 980 F.3d 526, 539 (6th Cir. 2020), but his arguments fail. The facts of *Mukes* are easily distinguishable from the evidence in this case. In *Mukes*, unlike here, there was "no evidence in the record about any potential risk that a bystander might have come across the weapon" during the defendant's brief encounter with the police. *Id.* The facts surrounding Brooks's arrest, supported by both body camera footage and still images, demonstrate that there were civilians outside the apartment complex during Brooks's attempt to flee. From this, the district court could reasonably infer that Brooks's conduct created a substantial risk that civilians in the vicinity of the chase could come across Brooks's discarded firearm. Also, the district court found Brooks tossed his gun and ammunition in a public area, in the middle of the day. This evidence supported the district court's decision to apply the reckless endangerment enhancement.

*2. Firearm Discharging upon Hitting the Ground.*

Next, Brooks contends that the district court erred in concluding that his dropping the gun created a strong probability of the firearm discharging and hurting someone else. Again pointing to *Mukes*, Brooks argues that the government was required to prove that the gun was "operable, cocked, and ready to fire," for a substantial risk of harm to exist. *See* 980 F.3d at 538. We disagree.

While the Sixth Circuit in *Mukes* imposed such requirements, we have thus far declined to adopt bright-line rules for § 3C1.2, noting that district judges are better positioned to hear the evidence and decide what counts as a "substantial risk." *United States v. Baker*, 56 F.4th 1128, 1131 n.2 (7th Cir. 2023). Instead, we have affirmed application of the enhancement where the district court could reasonably have inferred that the way the firearm was discarded could have caused the gun to go off upon hitting the ground. *Lard*, 327 F.3d at 554.

To find the enhancement warranted, "[t]he district court needs to adopt only a permissible view of the evidence." *Id.* at 554 (citing *United States v. O'Brien*, 238 F.3d 822, 825 (7th Cir. 2001)). Here, Brooks tossed a fully loaded firearm with an attached switch outside the doors of an apartment complex. Brooks makes no argument that these findings were clearly erroneous. As the district court explained, the "switch" made the modified Glock both highly inaccurate and even more dangerous because it was "fully automatic." In assessing the risk caused by throwing the loaded gun in a residential neighborhood with people nearby, the court determined that Brooks's action could have "caused injury or death to a police officer" or "a bullet could have gone into one of the windows in the complex and [] injured somebody inside." The risk was

especially dire, given the fact that the switch made the pistol an automatic weapon—it could have discharged through just hitting the ground. Based on the evidence before the district court, it was reasonable for the court to infer that the gun's characteristics rendered it capable of firing upon impact with the ground. *See id.* at 554; *United States v. Brown*, 31 F.4th 39, 49 (1st Cir. 2022) (concluding that it was reasonable for the district court to infer that the defendant's gun posed a risk of drop fire where there were rounds in four of the gun's five chambers); *Gray*, 942 F.3d at 632 (affirming a district court's application of § 3C1.2 enhancement where defendant threw a loaded firearm); *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1532 (10th Cir. 1986) (discussing "drop-fire," in which a "gun is carried with a bullet in the chamber over which the hammer rests," and "a sharp blow to the hammer, such as when the gun is dropped and lands hammer first, will cause the gun to discharge").

Brooks also argues that for the reckless endangerment enhancement to apply, the government was required or should have been required to test the firearm and to have an expert testify that the trigger of the gun was more susceptible to being fired. We have never imposed such a requirement. We also are unaware of any court that imposes such a requirement; it appears even the *Mukes* court would have been satisfied if there was testimony that the firearm was cocked when the defendant tossed it, without requiring testing of the weapon. 980 F.3d at 538.

The district court did not err in inferring that by throwing the loaded firearm, Brooks created a substantial risk of serious injury or death to pursuing officers or those individuals in the area.

### 3. Danger from Police Drawing Weapons

Brooks also challenges the district court's conclusion that by causing the officers to draw their weapons, Brooks created a substantial risk of death or bodily injury to another. According to Brooks, for this to satisfy Guideline § 3C1.2, the facts needed to show that the officer drew his weapon because the officer knew Brooks had a gun; the officer was preparing to shoot Brooks because the officer observed Brooks reaching for his waistband; or that the officer knew that Brooks was possessing a firearm while fleeing. We disagree.

In *United States v. Easter*, we concluded that reaching for a gun while running from police is enough to warrant the § 3C1.2 enhancement. 553 F.3d 519, 524 (7th Cir. 2009). This conduct, as we explained in *Easter*, creates a substantial risk that an officer might inadvertently shoot another officer or a bystander. *Id.*; *see also*, *United States v. Dennings*, 922 F.3d 232, 238 (4th Cir. 2019) ("Regardless of whether [the defendant] was carrying the firearm, putting it back in his pocket, reaching to retrieve it from his pocket, or trying to keep it inside his pocket as he ran, his movements 'created a substantial risk of death or a serious bodily injury to another person'… [because the defendant's] behavior could have led the pursuing officer to draw his own firearm in self-defense."); *United States v. Bates*, 561 F.3d 754, 757–58 (8th Cir. 2009) (defendant continually reaching toward his waistband during altercation with police sufficient to support enhancement under Guideline § 3C1.2).

Regardless of whether officers knew if Brooks possessed an operable firearm or whether he was reaching for another gun when reaching into his waistband, Detective Cerasa testified that individuals commonly conceal firearms or

weapons in their waistband, and it was these actions of Brooks that led the officer to draw his weapon. Brooks has not presented any evidence contesting this testimony. The court did not clearly err in relying on the officer's testimony when determining that Brooks's actions created a substantial risk of death or serious bodily injury to others.

Based on the foregoing, we are convinced that the district court did not err in finding that Brooks's conduct warranted the § 3C1.2 reckless endangerment enhancement.

### B. Mitigation Arguments

Brooks also claims that the district court committed procedural error by failing to address one of his key mitigation arguments. Specifically, Brooks argued that his juvenile convictions caused his Criminal History Category VI to overrepresent the seriousness of his criminal history. In his sentencing memorandum and before the district court, Brooks's counsel argued that as a juvenile, the defendant's brain was less developed and that he was more immature and thus less culpable than an adult committing those same violations. Brooks also pointed to cases from other circuits and district courts that factored in the defendant's age at the time of a prior conviction when determining whether the offender's criminal history points overstated the seriousness of the defendant's criminal record.

To bolster this argument, Brooks cites to § 4A1.3(b)(1) of the United States Sentencing Guidelines, which allows a court to grant a below-Guidelines sentence when the "criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1).

According to Brooks, the district court failed to consider this factor at sentencing.

"The Federal Sentencing Guidelines help guide district judges to select penologically appropriate sentences for criminal offenders. The operative term here is 'guide.'" *United States v. Gonzalez*, 3 F.4th 963, 964 (7th Cir. 2021). "But it is well established that after *United States v. Booker*, 543 U.S. 220, 259 (2005), which rendered the Sentencing Guidelines advisory, downward departures, *per se*, have become obsolete." *United States v. Turner*, 569 F.3d 637, 640 (7th Cir. 2009). "Though a district court must always consult the guidelines and take them into account, the ultimate length of a sentence (within statutory maxima and minima) is committed to the discretion of the district judge, who is constrained by the statutory factors in 18 U.S.C. § 3553(a)." *Gonzalez*, 3 F.4th at 965 (citing *Brooks*, 543 U.S. at 264).

We acknowledge that the Guidelines' recommendations are a helpful tool for judges, but we also recognize that they might not account for the particular nuances of an individual case. *Id.* For that reason, "we have held that a district court is free to deviate from the guidelines, so long as it offers an adequate statement of its reasons." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007)). "A district court commits procedural error when it fails to address a defendant's mitigating arguments that are not so weak as not to merit discussion." *United States v. Hendrix*, 74 F.4th 859, 868 (7th Cir. 2023) (internal citations omitted). "In determining whether a court addressed an argument, we consider the totality of the record." *United States v. Wilcher*, 91 F.4th 864, 874 (7th Cir. 2024).

Brooks points to several mitigating circumstances that, he believes, the district court failed to consider, including "his

youth, immaturity, susceptibility, and diminished culpabil-
ity." Specifically, he argues that the district court failed to con-
sider how his "juvenile characteristics" and "diminished cul-
pability" warranted a lower category determination.

Turning first to the cases that Brooks relied on to demon-
strate that his juvenile characteristics supported a lower crim-
inal history to effectuate a lower sentence,[2] the district court
explained that the cases identified by Brooks were distin-
guishable from the facts of the present case. In the cases pre-
sented by Brooks, the juvenile convictions were years, if not
decades, prior to the offense of conviction, the maturity and
age of the defendants were different, and the nature of the
crimes was different. In the court's view, neither Brooks's
young age, his loss of family and friends to gun violence, nor
his previous arrests and convictions had deterred his criminal
activity. Instead, his criminal activity had escalated with "no
gap in time" between his offenses.

Brooks also argues that the court did not give meaningful
consideration to his "immaturity" and "age." We disagree.
The court observed that since the age of fourteen, Brooks had
continued to engage in a "steady progression" of criminal be-
havior. The court noted that Brooks's most recent conviction,
which was close in time to the instant offense, involved the
aggravated unlawful use of a weapon. The court concluded
that Brooks's criminal history category "fairly represent[ed]
his history" and determined that Guideline § 4A1.3(b)(1) was
inapplicable. The district court did not overlook Brooks's

---

[2] *See United States v. Shoupe*, 988 F.2d 440, 447 (3d Cir. 1993); *United
States v. Brown*, 985 F.2d 478, 482 (9th Cir. 1993); *United States v. Hammond*,
240 F. Supp. 2d 872, 878 (E.D. Wis. 2003).

"juvenile characteristics" and diminished capacity arguments. Rather, the district court considered and adequately explained its reasons for rejecting the arguments. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).[3]

### C. Above-Guidelines Sentence

Finally, Brooks argues that the district court failed to adequately justify his 96-month above-Guidelines sentence. Such allegations are procedural challenges that we review *de novo*. *United States v. Annoreno*, 713 F.3d 352, 356–57 (7th Cir. 2013). "In doing so, we assess whether the district court committed any significant error, such as by failing to adequately explain a sentence. *United States v. Wilcher*, 91 F.4th 864, 869 (7th Cir. 2024) (citing *Gall*, 552 U.S. at 51).

As we have explained, the district court's explanation need not be exhaustive or reference each 18 U.S.C. § 3553(a) factor, but it must still show that the court thoroughly considered them. *United States v. Orozco-Sanchez*, 814 F.3d 844, 848 (7th Cir. 2016). The reason is twofold: to allow for "meaningful appellate review" and to "promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. In other words, we will uphold an above-Guidelines sentence "so long as the district court offered an adequate statement of its reasons, consistent

---

[3] Brooks also analogizes his case to *United States v. Ballard*, 12 F.4th 734 (7th Cir. 2021), in which a defendant whose criminal history spanned over thirty years was placed in criminal history category VI and sentenced to 92 months, also for violating 18 U.S.C. § 922(g). Aside from the fact that there are pertinent distinctions between the two cases, we agree with the government that to the extent Brooks was attempting to argue unwarranted sentencing disparity, he failed to develop this argument and has thus waived it. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014).

with 18 U.S.C. § 3553(a)." *United States v. McIntyre*, 531 F.3d 481, 483 (7th Cir. 2008).

Here, the district court adequately explained why the "aggravating circumstances" in this case warranted an upward variance from the recommended range of the Guidelines. In considering the § 3553(a) factors, the court noted that Brooks's offense was "very serious": not only had Brooks modified the weapon to make it automatic, but he also had a clip with over fifteen rounds and another clip with thirty-one rounds. The court also found that the "switch" was "not covered in the guidelines." Brooks argues this finding was error. We agree, but the error was harmless. *See United States v. Wood*, 31 F.4th 593, 599 (7th Cir. 2022) ("A procedural sentencing error is harmless if the sentence would have been the same without the error.").

As explained in the PSR, Brooks's base offense level was calculated at twenty pursuant to U.S.S.G. § 2K2.1(a)(4)(B). Under the Sentencing Guidelines, § 2K2.1(a)(4)(B) applies if "the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; *or* (II) firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(4)(B) (emphasis added). Section 5845(a) includes a machine gun within the definition of a firearm. It defines a "machine gun" as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term [includes] *any part designed and intended solely and exclusively, or combination of parts*

*designed and intended, for use in converting a weapon into a machinegun*[.]

26 U.S.C. § 5845(b) (emphasis added). Because Brooks's switch allowed his "conventional semi-automatic Glock pistol to function as a fully automatic firearm," the district court should have determined that the modified Glock was represented under § 2K2.1(a)(4)(B)(i)(II) as a qualifying machine gun. *Id.*; *United States v. Camp*, 343 F.3d 743. 745 (5th Cir. 2003) (holding that modifying a rifle with a switch, which allowed the weapon to fire until either the shooter released the switch or the loaded ammunition was expended, converted the weapon into a machine gun).

The error was harmless, however, because the district court went on to find that the switch and the clip with over thirty rounds of ammunition could also call for an enhancement of the sentence. The commentary to Guideline § 2K2.1 indicates that an upward departure may be warranted if "the offense posed a substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1 cmt. n.11. Here, the court explained that the gun's modification created "an extremely dangerous weapon" that enhanced its "killing potential." With the switch, the Glock was not only "more difficult to control," but now able to fire "multiple bullets instantaneously," making it more likely that innocent bystanders could be killed.

Next, the court considered Brooks's personal history and characteristics, including his childhood upbringing, gang affiliation, mental health issues, and prior social services. The court noted that despite having a loving family and many opportunities for progress, Brooks persisted with his criminal activity. The court explained that Brooks was a repeat

offender who continued to engage in criminal behavior with no gap in time. The court also noted that at the time of the instant offense, Brooks was on probation for an aggravated unlawful use of a weapon conviction. This did not deter Brooks, however, from possessing a "fully automatic" weapon capable of killing multiple people. The court found Brooks to be a "a serious safety risk to the public."

The court emphasized that it was Brooks's "steady progression" in delinquent behavior that caused the court to question the viability of Brooks's rehabilitative potential. The district court highlighted Brooks' numerous outstanding warrants for failing to appear in state court and his various disciplinary problems and sanctions while detained awaiting the resolution of the present case. All of this, for the court, demonstrated Brooks's disrespect for the law.

For all of these reasons, the court permissibly found that aggravating circumstances called for a sentence above the Guidelines range. First, the district court correctly calculated the Guidelines range. Next, the court considered the dangerous nature and circumstances of Brooks's offense and concluded that it was more serious than simple possession of a firearm. The court considered Brooks's extensive criminal conduct with no gaps in time. It carefully explained why a sentence within the range would not reflect the seriousness of Brooks's crime, adequately deter him in the future, or adequately protect the public. *See* 18 U.S.C. § 3553(a)(1)–(2). The court fulfilled its obligation to give an adequate explanation of its sentence.

As we have recognized, "firearm possession by a felon who exhibits particularly lawless behavior generally warrants a lengthier sentence than a 'run-of-the-mill' § 922(g)(1)

offender." *United States v. Ingram*, 40 F.4th 791, 796 (7th Cir. 2022). This, coupled with the district court's consideration of the import of deterring such conduct and protecting the public, satisfies us that the sentence was reasonable. *See United States v. Abbas*, 560 F.3d 660, 668 (7th Cir. 2009) ("Where, as here, the judge has made a searching evaluation of a defendant's case, applied the statutorily mandated factors to the sentence and clearly articulated why the given defendant warrants a sentence that would be a departure from the correct range, the sentence is reasonable.").

Brooks responds that the sentence—eight years for mere possession of a firearm—will lead to sentencing disparities. While Brooks is correct that § 3553(a)(6) requires district courts to consider the need to avoid unwarranted sentencing disparities, "the disparity provision leaves plenty of room for differences in sentences when warranted under the circumstances*." United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020). "[S]entencing is never abstract: the district court is required by § 3553 to tailor its sentence to the particular defendant before it." *Id. (quoting United States v. Solomon*, 892 F.3d 273, 279 (7th Cir. 2018)); *see also United States v. Lockwood*, 840 F.3d 896, 904 (7th Cir. 2016) ("In our legal tradition, each defendant is treated as a unique individual and 'every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (citation omitted)).

Here, the district court concluded that Brooks's actions, which included the possession of a fully loaded semiautomatic gun with a switch able to kill multiple people, warranted a more severe sentence. The district court found that Brooks posed a serious risk to the public. The court also noted

Brooks's disrespect for the law, evident by him continuing to engage in criminal activity while on bond for various state offenses and his numerous outstanding warrants for failing to appear in pending state cases. The court explained that Brooks' behavior both while on probation on the state charge and while in pretrial detention on the present federal case caused it to question Brooks's rehabilitative potential upon release. For these reasons, the district court concluded that an above-Guidelines sentence of 96 months was warranted. Because the district court's sentencing explanation, when read as a whole, demonstrates that the court primarily relied on permissible factors and adequately reasoned through § 3553(a), we do not find that the district court erred.

## III. CONCLUSION

Brooks's challenges to his sentence are unavailing. For the reasons stated herein, we AFFIRM the judgment of the district court.